**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

        Plaintiff(s),                **CASE NUMBER: 06-20185
HONORABLE VICTORIA A. ROBERTS**

v.

**ROY WEST ET AL.,**

        Defendant(s).
_____/

**ORDER**

**I.    BACKGROUND**

This matter is before the Court on Roy West's Motion in Limine. (Doc. # 454) Michael Bracey joins, (Doc. # 459) along with Alseddrick West. (Doc. # 505) Defendants move for exclusion of certain audio recordings at trial. They also ask that the Court preclude the Government from stating the name of the uncharged conduct for which Roy and Alseddrick West were arrested on November 12, 2005. The Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

In June 2010, a First Superseding Indictment was filed charging Defendants with Conspiracy to Use Interstate Commerce Facilities In the Commission of Murder-for-hire, in violation of 18 U.S.C. § 1858. The indictment alleges that, "[f]rom on or about November 10, 2005 until on or about December 20, 2005," Defendants conspired to travel and to cause another to travel from Ohio to Michigan, and use and cause another to use a telephone, with the intent that the murder of Leonard Day be committed. (Doc. # 433) Leonard Day allegedly stole $100,000, $250,000 worth of jewelry, and a .40

1

caliber pistol from Roy West's home in Ohio before fleeing to Detroit. (*Id.*)

The Government alleges that the evidence establishes that between November 10, 2005 and December 20, 2005, the Defendants were actively searching for Day and expressed and intention to kill him. (*Id.*) During this time, specifically, on November 12, 2005, Roy West, Alseddrick West, and two other individuals, were arrested at the Pontchartrain Hotel in Detroit for conspiring to murder Leonard Day. The police found guns and bullet proof vests stored in an electrical closet in the hotel. However, several days later, Roy and Alseddrick West were released; charges were never filed against them.

On December 20, 2005, around 6:30 pm, Day was shot to death in Detroit. (*Id.*) Then, around 6:30 pm the same day, Marcus Freeman and Christopher Scott, alleged coconspirators, called Roy West to tell him, "the situation is over with." (*Id.*) Freeman and Scott then traveled to Ohio, the Government contends, to receive a payment for the murder. As of February 2006, the Government alleges, Freeman had not yet been paid in full for his part in the conspiracy.

While the events leading to the indictment in this case were occurring, Roy West's cellular telephone was the subject of a Title III wiretap. The Government intends to introduce into evidence audio recordings of some of the conversations between West and others, and between West and the alleged coconspirators, stating that the conversations are inculpatory. Certain conversations between Freeman and others, while Freeman was incarcerated at Wayne County Jail in February 2006, were also captured and recorded and the Government intends to introduce these conversations as well.

2

## II. ARGUMENTS AND ANALYSIS

### 1. Marcus Freeman's Wayne County Jail Calls

Defendants argue that the Government should be precluded from playing at trial, audio recordings of conversations that occurred on February 3, 2006, between Marcus Freeman and other individuals, while Freeman was incarcerated at Wayne County Jail, because the statements made constitute inadmissible hearsay. (Doc. # 455, p. 5) The Government responds that it intends to play two out of the three recordings, where Freeman instructs Candace Brown and Che McAdoo to preserve his Boost phone so that they can call Roy West in order to collect money West owed him for murdering Day. (Doc. # 486, p. 4) The Government contends that these statements are excluded from the definition of hearsay pursuant to Fed. R. Evid. 801 (d)(2)(E), the so-called "coconspirator exception." (*Id.* at 4-6)

Under that Rule, a statement is not hearsay if the statement is offered against a party and it is made "by a coconspirator of [the] party during the course and in furtherance of the conspiracy." FED. R. EVID. 801 (d)(2)(E). Prior to admitting statements under the coconspirator exception, three foundational requirements must be established. *United States v. Conrad*, 507 F.3d 424, 429 (6th Cir. 2007). It must first be determined that the conspiracy existed, the defendant was a member of the conspiracy, and the coconspirators statements were made during the course and in furtherance of the conspiracy. *United States v. Payne*, 437 F.3d 540, 544 (6th Cir. 2006). The Government bears the burden to prove the existence of these foundational facts by a preponderance of the evidence. *United States v. Martinez*, 430 F.3d 317, 325 (6th Cir.

2005). "These findings, often called *Enright* findings, must be made by the district court." *Id.* (citing *United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978)).

On October 18, 2010 the Court held an *Enright* hearing, *see United States v. Enright*, 579 F.2d 980 (6th Cir. 1978) and found that the Government proved by a preponderance of the evidence that a conspiracy to use interstate facilities to murder Leonard Day existed and that Roy West, Alseddrick West, and Michael Bracey were members of the conspiracy. The Court now finds that the Government has shown that Freeman's statements, made during Wayne County Jail Calls 2 and 3, were made during the course and in furtherance of the conspiracy.

The gravamen of Defendants' argument is that statements made in 2006 were not made "during the course and in furtherance of the conspiracy," because, according to the indictment, the conspiracy ended on December 20, 2005 and, according to the indictment, the object of the conspiracy was to kill Leonard Day. (Doc. # 455, p. 8) Because the contested statements were made after the conspiracy ended, its object complete, they were not intended to further the conspiracy. (*Id.*) Defendants are free to argue the calls had nothing to do with payment for Day's murder.

The Government responds that the scope of the conspiracy, as alleged in the indictment, does not limit the application of the exception. (Doc. # 486, p. 5) The Government emphasizes that Defendants are not simply charged with murder, but with conspiracy to commit a murder-for-hire, and that one objective of the conspiracy was payment for Day's murder. (*Id.*) Because Freeman indicated in the contested recordings that West still owed him money, and made statements to induce Brown and McAdoo to preserve his phone so that they could call West in order to collect the payment, the

4

statements were made during the course and in furtherance of the conspiracy. (*Id.*) Defendants are free to argue the calls had nothing to do with payment for Day's murder.

It is true that "out-of-court statements made *after* the conclusion of the conspiracy are not made 'in furtherance of the conspiracy,' and are thus not admissible under the co-conspirator exception." *Conrad*, 507 F.2d at 430 (emphasis in original). However, as the Government notes, the scope of the conspiracy as alleged in the indictment does not necessarily restrict application of the exception. *Martinez*, 430 F.3d at 326 (citing *United States v. Pope*, 574 F.2d 320, 328 (6th Cir. 1978)). In fact, a conspiracy need not be charged in the indictment for the exception to apply, as long as there was a joint venture relevant to proof of the crime charged, and the contested statements were made in furtherance of the joint venture. *Pope*, 574 F.2d at 328. In addition, "[t]he arrest of one coconspirator does not automatically terminate the conspiracy." *United States v. Smith*, 578 F.2d 1227, 1233 n. 12 (8th Cir. 1978).

Whether a joint venture continued when Marcus Freeman made the contested statements to Brown and McAdoo, "depends upon whether the 'central criminal purposes of (the) conspiracy' had been attained by the time" the statements were made. *United States v. Hickey*, 596 F.2d 1082, 1089 (1st Cir. 1979) (citing *United States v. Grunewald*, 353 U.S. 391, 401 (1957)).

To prove Defendants guilty, the Government must show that they not only conspired to travel or cause another to travel in interstate commerce, or to use or cause another to use a facility of interstate commerce, with the intent that Day be murdered, but that they did so "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value...." 18 U.S.C. § 1958 (a). Thus, one

5

objective of a conspiracy to commit murder-for-hire is payment, as set forth in the statute. While the indictment alleges that Freeman traveled to Ohio to receive payment for the murder after it was committed, (Doc. # 1, p. 5) the contested statements provide support for the Government's theory that Freeman had not yet received full payment. *See Bourjaily v. United States*, 483 U.S. 171, 180 (1987) (district courts can consider that conspirator's statements, themselves, when making preliminary admissibility determination).

Roy West, the alleged mastermind behind the scheme, was the only conspirator with a vendetta against Day. The other conspirators were allegedly in the scheme solely to make money, "so any allegation that making money was not a conscious purpose of the conspiracy...is without merit." *United States v. Hamilton*, 689 F.2d 1262, 1270 (6th Cir. 1982). The Sixth Circuit has observed that "payment is an integral and often final term in a conspiracy." *Id.*; *see also Hickey*, 596 F.2d at 1089-90 (holding that statements made by a coconspirator after the completion of the bank robbery, but before the money obtained was divided and all of the robbers escaped undetected, were admissible as statements made during the course of the conspiracy); *United States v. Testa*, 548 F.2d 847, 852 (9th Cir. 1977) ("An integral element of the scheme involved the payment of tribute money, and the conversations dealt specifically with arrangements for such payment."); *United States v. James*, 494 F.2d 1007, 1026 (D.C. Cir. 1974) (a conspiracy continues until all of its criminal objectives have been accomplished, including the collection of "illicit gains"). A jury could reasonably interpret the calls as evidence that as of February 2006, West still owed Freeman money for Freeman's part in carrying out the conspiracy. Thus, Freeman's statements to Brown

6

and McAdoo made during his February 3 conversations from Wayne County Jail were made during the course of the conspiracy, and in furtherance of it.

### 2. Roy West's Milan Call

Defendants state that the Government tendered three transcripts of conversations West had with unknown individuals while he was incarcerated at Milan Detention Center on November 25, 2009 and November 29, 2009. (Doc. # 455, p. 8) In its response, the Government says that it no longer intends to play two of the three recordings. (Doc. # 486, p.1) However, the Government plans to introduce RW Milan Call 1, which occurred on November 25, 2009. In this conversation, Roy West is speaking with an unidentified male. West tells the individual that "South," who is standing right next to him, says hello. The unidentified speaker asks West to pass the phone to South and West says that he cannot.

Defendants argue that this call is irrelevant. (Doc. # 455, pp. 8-9) The Government responds that the conversation is relevant because it proves that Alseddrick West is South. (Doc. # 486, p. 6) The Government states that the jury will hear evidence that South saw Day as he was leaving West's home in Akron, Ohio with the stolen goods, and that South then traveled to Detroit and was at the Days Inn with West and other coconspirators the following day, searching for Day, and was arrested the day after that at the Pontchartrain Hotel. (*Id.* at 6-7) the Government contends:

> Since South was in Akron on November 10, 2005, in Detroit during the arrests at the Pontchartrain Hotel, and is now at Milan with Roy West, the jury will have proof that Alseddrick West is South and will have an understanding of his actions in furtherance of the conspiracy. Without the evidence that "South" and Alseddrick West are one and the same, the jury will have only a limited understanding of Alseddrick West's participation. There can be no question that the (sic) Alseddrick West's identification as

7

South has significant probative value.

(*Id.* at 7)

Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." West's conversation with the unidentified speaker, where he mentions that he is in prison with "South," corroborates the connection that South has with Roy West. This connection, of course, will also be established by the other evidence that the Government intends to introduce to show that South was helping West attempt to locate Day. However, the jury will learn that Alseddrick West was incarcerated at Milan on November 25, 2009, and through this recording, that South was also incarcerated at Milan at this time. Thus, the conversation is relevant; it tends to prove a fact that is of consequence, namely, that South is Alseddrick West.

### 3.   **Michael Bracey's Milan Call**

The Government agrees not to play this audio recording. (Doc. # 486, p. 1)

### 4.   **The Name of Roy West's Uncharged Conduct**

Defendants contend that "[w]hile the Government may elicit testimony that West was arrested on [November 12, 2005], it should be precluded from introducing the name of the charge he was being held for investigation on and never charged with," this charge being, conspiracy to commit murder-for-hire. Defendants contend that the name of the charge is irrelevant and unduly prejudicial. The Government responds that the name of the charge for which Roy West and others were arrested on November 12 is

admissible as an admission and is highly probative of his guilt.

In RW Call 4658, West speaks to an unidentified male on November 14, 2005, the day he is released from jail after being arrested at the Pontchartrain Hotel. The unidentified male asks, "What they have you for?" and West replies, "Conspiracy to Commit a Murder." The unidentified male then asks him, "how they know all that?" West replies, "I don't know who, what but the snitch s**t goin' on up here."

Fed. R. Evid 801 (d)(2)(B) allows a court to admit a statement into evidence, as non-hearsay, if "[t]he statement is offered against a party and is...a statement of which the party has manifested an adoption or belief in its truth." The Advisory Committee Notes to the Rule state that an admission may be made by adopting or acquiescing in the statement of another. An adoption may be manifested in any appropriate manner, "such as language, conduct or silence." *Neuman v. Rivers*, 125 F.3d 315, 320 (th Cir. 1997) (quoting *United States v. Jinadu*, 98 F.3d 239, 244 (6th Cir. 1996)).

The Sixth Circuit said:

> When a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood and acquiesced in the statement.

*Id*. West was asked how police knew about his conspiracy to commit murder and he responded that he didn't know but that there must be a snitch. Under these circumstances, the argument can be made that if West believed in his innocence, he would have protested the speaker's accusation. Instead, he manifested a belief in the truth of the conduct for which he was arrested when he said that he didn't know how the police learned of his conspiracy, but they must have found out about it from a snitch.

9

This conversation is admissible against Roy West as an adoptive admission.

While this statement is prejudicial to West, all inculpatory evidence is prejudicial. *See United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997). Under Fed. R. Evid. 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice...." "Unfair prejudice" has been interpreted to mean "the undue tendency to suggest a decision based on improper considerations; it does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence." *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999). Although this evidence is highly prejudicial to Roy West, "it cannot be said to be *unfairly* prejudicial" in light of its strong probative value. *Id.* (emphasis in original).

While the name of Roy West's uncharged conduct is admissible at trial as an admission against him, this does not end the matter. Alseddrick West and Michael Bracey join in Roy West's motion to preclude the government from mentioning this conduct by name. The Government would presumably offer West's statement against these defendants for its truth. In call 4657, which the Government also intends to introduce, the unidentified male asks West, "what they have *y'all* for?," meaning why were both Roy and Alseddrick West arrested by the police on November 12. Thus, West's answer in call 4658, "Conspiracy to Commit a Murder" could fairly be attributed by the jury to Alseddrick West as well, and would be highly prejudicial for that reason. Because Alseddrick West was not the declarant, did not manifest an adoption in his brother's or the other speaker's statements, and because the statements do not appear to be made during the course and in furtherance of the conspiracy, the name of the uncharged conduct is not admissible against Alseddrick West under FRE 801(d)(2).

Likewise, the name of this conduct is inadmissible hearsay against Bracey.

### 5. Roy West Calls 7277, 7717, and 9791

The Government agrees not to play these audio recording. (Doc. # 486, p. 1)

## III. CONCLUSION

Roy West's Motion in Limine is **GRANTED IN PART AND DENIED IN PART**. Evidence of Marcus Freeman's February 3, 2006 conversations from the Wayne County Jail is admissible against all Defendants. Evidence of Roy West's phone conversation on November 25, 2009, offered to prove that Alseddrick West is "South," is relevant and admissible for identification purposes. The name of the uncharged conduct for which Roy and Alseddrick West were arrested on November 12, 2005 is admissible against Roy West but, inadmissible against Alseddrick West and Michael Bracey.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: October 22, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 22, 2010.

s/Linda Vertriest
Deputy Clerk