UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,
v.                                      Case No. 06-20185
                                              Honorable Victoria A. Roberts

CHRISTOPHER SCOTT,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION
## FOR SENTENCE REDUCTION [ECF No. 957]

**I.    INTRODUCTION**

Christopher Scott moves for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). He asks the Court to reduce the remainder of his sentence to time served due to medical reasons and his increased risk of severe illness if he contracts COVID-19.

For the reasons below, the Court **DENIES** Scott's motion.

**II.    BACKGROUND**

The Court sentenced Christopher Scott to 180 months in prison after he pled guilty to killing a person while engaged in an offense punishable under 18 U.S.C. § 924(c) and aiding and abetting. [ECF No. 919]. In exchange for compensation, Scott and a co-conspirator spent over a month

hunting for Leonard Day, intending to kill him.  On December 20, 2005, Scott and a co-conspirator found Day, shot him multiple times while he sat in a car outside his friend's home, and murdered him.

Scott accepted responsibility for the crime.  His guideline range was 235-293 months, but the parties stipulated to a 180-month sentence.  The Court sentenced Scott to a term of 180 months and three years of supervised release.  Scott has served 135 months of his sentence.  With good time credit, his projected release date is June 7, 2023.

Scott has some history of disciplinary incidents while in prison: May 8, 2020 for possessing a hazardous tool; March 1, 2019 for refusing a work assignment; April 5, 2016 for possession of a non-hazardous tool; March 26, 2014 for fighting with another person; and September 27, 2011 and May 1, 2011 for refusing to obey orders.  Under "PATTERN" – a prisoner risk assessment tool used by the BOP – Scott presents a "high" risk for recidivism.

In July 2020, Scott moved for compassionate release, pro se, based on his underlying medical conditions (comorbidities and obesity) and the COVID-19 pandemic.  [ECF No. 947].  The Court denied Scott's motion because he failed to properly exhaust the administrative process with the Bureau of Prisons ("BOP").  [ECF No. 955].

In April 2021, Scott renewed his motion; he filed a pro se Motion for Leave to Proceed with the Motion Under 18 U.S.C. § 3582. [ECF No. 957]. The Court appointed him counsel. In August 2021, his attorney filed a supplemental brief in support of Scott's renewed motion. The motion is fully briefed.

### III.  DISCUSSION

The sentence reduction statute allows the Court to modify a defendant's term of imprisonment if: (1) he fully exhausts all administrative remedies; (2) he shows both "extraordinary and compelling reasons warrant such a reduction [or release]" and that the reduction or release is consistent with" the Sentencing Commission's policy statements; and (3) the factors in 18 U.S.C. § 3553(a) support the reduction or release to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A)(i); United States Sentencing Guidelines Manual ("USSG") § 1B1.13 cmt. n.1; *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021).

### A. Medical Conditions

Scott argues that he has underlying medical conditions that "substantially increase his risk while being incarcerated during the COVID-19 pandemic." [ECF No. 962, PageID.12679]. These medical conditions include comorbidities, obesity, and a history of heart attacks. [ECF No.

3

962, PageID.12682]. Scott is 5'10" and weighs 215 lbs. His Body Mass Index ("BMI') is 31.3. According to the Centers for Disease Control and Prevention ("CDC"), a BMI greater than 30 is obese. https://www.cdc.gov/obesity/adult/defining.html. Scott suffered two heart attacks prior to his incarceration, one in 2008 and another in 2009. [ECF No. 962, PageID.12682].

He is currently incarcerated at the FCI Edgefield facility in Edgefield, South Carolina. As of September 22, 2021, FCI Edgefield has seven (7) confirmed inmate COVID-19 cases and three (3) confirmed staff COVID-19 cases. https://www.bop.gov/coronavirus/.

**B. Refusal to receive COVID-19 Vaccine**

On January 13, 2021 and April 6, 2021, the BOP offered Smith the Pfizer-BioNTech COVID-19 vaccine. Scott refused it both times. Scott says he has refused all medications since his incarceration in 2010. He attributes his refusals to his distrust of: (1) drugs; (2) the medical profession; and (3) the government. [ECF No. 967, PageID.12773].

Scott is entitled to his beliefs and his distrust. However, judges in this district consistently decline to find extraordinary and compelling medical circumstances when a defendant declines the COVID-19 vaccine. *See, e.g., United States v. MacGregor*, No. 15-20093, ECF No. 339,

4

PageID.2184 (April 12, 2021) (Leitman, J) (defendant "failed to show that there were extraordinary and compelling reasons justifying his release because a COVID-19 vaccine had been offered to him, and he declined to take the vaccine"); *United States v. Goston*, No. 15-20694, ECF No. 153, PageID.926 (March 9, 2021) (Levy, J.) ("The Court denies Defendant's motion for compassionate release because his access to the COVID-19 vaccine mitigates any extraordinary and compelling reasons that might otherwise justify release."); *United States v. Austin*, No. 15-20609, 2021 WL 1137987, at *2 (E.D. Mich. Mar. 25, 2021) (Cleland, J.) (finding defendant's medical conditions were not an extraordinary and compelling reason for release because defendant refused to receive a COVID-19 vaccine without justification).

Similarly, this Court finds that Scott's failure to avail himself of a vaccine which could decrease his risk of contracting COVID-19 and minimize his symptoms, is the death knell to his extraordinary and compelling circumstances argument.

"Allowing federal prisoners to qualify for compassionate release by declining to receive a COVID-19 vaccine, without justification, would discourage prisoners from becoming vaccinated." *Austin*, 2021 WL 1137987, at *2. Providing "prisoners an incentive to increase their risk of

contracting COVID-19 and developing severe symptoms … would be profoundly counter-productive and would militate against the ameliorative purposes of compassionate release." *Id*.

The information available to the Court suggests that being fully vaccinated significantly reduces an individual's risk of getting seriously ill from COVID-19. For example, the CDC states that "[s]tudies show that COVID-19 vaccines are effective at keeping [individuals] from getting COVID-19" and that "[g]etting a COVID-19 vaccine will also help keep [individuals] from getting seriously ill even if [they] do get COVID-19." *Key Things to Know About COVID-19 Vaccines*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (last updated August 19, 2021); *COVID-19 Vaccines Work*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last updated August 16 2021) ("Vaccine effectiveness studies provide a growing body of evidence that COVID-19 vaccines offer similar protection in real-world conditions as they have in clinical trial settings, reducing the risk of COVID-19, including severe illness, among people who are fully vaccinated by 90 percent or more.").

Scott has the opportunity to receive the COVID-19 vaccine – a preventive measure that would allow the BOP to mitigate dangers to Scott's health and safety – but he has refused without a valid reason. The Court declines to find Scott's medical conditions are extraordinary under these circumstances.

## IV. CONCLUSION

Because Scott has refused to receive the COVID-19 vaccine without justification, the Court finds his medical conditions do not constitute an extraordinary and compelling reason for release, as required in 18 U.S.C. § 3582(c)(1)(A)(i). The Court **DENIES** Scott's motion for sentence reduction.

**ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 23, 2021